21 F.3d 423
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Mahjabin KIDWAI, Plaintiff-Appellant,
v.
McDONALD'S CORPORATION; Bill Lowery; Paul Van Sickle;
Lonnie Taylor; Chris Searles; Ken Evenson,
Defendants-Appellees,
and
David NATLYSON; Jim Rohls, Defendants.
 No. 93-1720.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 9, 1994.
Decided April 18, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CA-93-28-A)
 Maxine Bethel Cade, Cade & Vaughcarrington, Washington, DC, for appellant.
 Jack L. Gould, Fairfax, VA, for appellees.
 Glenwood P. Roane, Thorsey & Roane, P.C., McLean, VA, for appellant.
 E.D.Va.
 AFFIRMED.
 Before PHILLIPS and MURNAGHAN, Circuit Judges, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Plaintiff-appellant Mahjabin Kidwai, an employee of McDonald's Corporation (McDonald's), brought claims of sexual harassment and retaliation, under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U.S.C. Sec. 2000e et seq., against the company and five of its managerial employees. The district court granted defendants' motion for summary judgment and Kidwai has appealed.
 
 
 2
 * After seventeen years of working for McDonald's, the fast food company, Kidwai had worked her way up to the position of Area Supervisor, with the responsibility of managing six stores in northern Virginia. She has brought claims of sexual harassment and retaliation under Title VII against McDonald's and five of its managerial employees, including Ken Evenson, her immediate supervisor.
 
 
 3
 * At deposition, Kidwai testified to the following alleged acts of sexual harassment. First, at a company picnic, Evenson noted that Kidwai had a new boyfriend, a statement that Kidwai deemed to be sexual harassment because it was not a supervisor's business whether an employee has a new boyfriend.
 
 
 4
 Second, consistent with the nature of the fast food business, which frequently requires managerial personnel to communicate with each other after normal business hours, Evenson called Kidwai at home one night about a problem in one of the stores. During the conversation Evenson asked her whether anyone from McDonald's was with her, commenting that sometimes people drop in. Kidwai has alleged that Evenson asked her if she was in bed with someone. Evenson has denied ever asking her that question, but upon review of a summary judgment we accept her version. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).
 
 
 5
 Third, Evenson told Kidwai that he would like her to meet his mother. Fourth, Evenson asked Kidwai how her vacation had been and whether she had had a good time, and told her three or four times that he had missed her. He also asked what she liked to do to have a good time and volunteered that he personally liked to stay home and to read books or to watch television.
 
 
 6
 Fifth, Evenson asked Kidwai if she would cook dinner for him after she moved into her new home, a question that Kidwai interpreted as a request for sex. Sixth, on an excursion to a deserted site for a new McDonald's store, Evenson drove too fast, scaring her literally to tears. Kidwai has claimed that Evenson was "hollering," "cursing," and "laughing" at her. She also testified that he never touched her, threatened to touch her, or propositioned her.
 
 
 7
 Seventh, Evenson used profanity, on one occasion asking her, "Who the hell do you think you are?" and "What the f--- do you think you've been doing for the last year?" Kidwai did not recall Evenson ever calling her a derogatory name.
 
 
 8
 Furthermore, Kidwai has claimed that each of the other managerial defendants knew of Evenson's propensity to use foul and abusive language and to tell jokes with sexual innuendo in the presence of female employees, conduct for which she alleged he had been previously demoted. On at least one occasion, Kidwai surreptitiously taped a lengthy telephone call with Evenson, in the hope of capturing some discriminatory or harassing remark. The call revealed no conduct suggesting discrimination or harassment, and Kidwai did not voluntarily produce the tape during discovery.
 
 
 9
 In the fall of 1991 Kidwai complained to the other managerial defendants that Evenson had harassed her and had intentionally discriminated against her on the basis of sex. Her claims of sexual harassment against the other managerial defendants were based on allegations that they took inadequate steps to deal with Evenson's misconduct, even after she alerted them to the problem.
 
 B
 
 10
 At the same time that Evenson was allegedly engaging in discriminatory conduct, Kidwai herself was coming under increased criticism from several of the six store managers whom she supervised. According to five store managers' affidavits--none of which Kidwai refuted--she attempted to undermine Evenson in the eyes of her managers by falsely telling them that he had given them low scores in performance evaluations. Moreover, she told managers who were not white males that Evenson would actively discriminate against them based on their race or sex or both. For example, Kidwai told Pam Carey that Evenson gave stock options to Mark Green, a white male store manager, but not to Carey, a black female store manager; Carey later learned that Evenson had awarded her stock options, but Kidwai had withheld the information from her.
 
 
 11
 Based on complaints from store managers who labored under Kidwai's supervision, McDonald's launched an investigation into her conduct on November 1, 1991--only one day after Kidwai had lodged one of her sexual harassment complaints against Evenson. McDonald's put Kidwai on paid administrative leave pending the completion of the investigation--an action that Kidwai views as retaliation for her sexual harassment complaints against Evenson.
 
 
 12
 On November 19, 1991, after McDonald's concluded its investigation of both Kidwai's sexual harassment charge and the store managers' complaints about Kidwai, two personnel supervisors met with Kidwai and gave her two memoranda. According to one of the memoranda, McDonald's suspended Kidwai for two weeks without pay because she had tried to subvert the company's investigation into the managers' allegations against her by contacting two witnesses, in violation of the company's previous instructions. Kidwai also was told that--even though her complaint of sexual harassment against Evenson was not well-founded--when she returned from her two-week suspension, she would be assigned to work with a different supervisor, a woman. Kidwai refused to return to work after her suspension, claiming that she was disabled.
 
 C
 
 13
 Kidwai filed Title VII charges of discrimination based on race, national origin, and sex, as well as charges of retaliation, against the defendants. The United States District Court for the Eastern District of Virginia dismissed her claims of race and national origin discrimination as to all defendants.[1] After the completion of discovery, McDonald's filed a motion for summary judgment with supporting affidavits and exhibits. Kidwai filed an opposition, to which she attached (1) McDonald's sexual harassment policy from the company's employee handbook; (2) a February 1992 letter from Kidwai's psychiatrist describing her recent "emotional problems"; and (3) a three-page declaration from Kidwai herself. Kidwai did not file any other declarations or affidavits; nor did she refer the court to the transcripts of any of the depositions that were taken. After argument, the district judge issued a bench ruling granting defendants' motion for summary judgment.
 
 II
 
 14
 * Kidwai brought a claim of workplace sexual harassment under Title VII of the Civil Rights Act of 1964. Title VII makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. Sec. 2000e-2(a)(1). Title VII is violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and [to] create an abusive working environment." Harris v. Forklift Sys., Inc., 114 S.Ct. 367, 370 (1993) (quoting Meritor Sav. Bank v. Vinson, 477 U.S. 57, 65, 67 (1986)) (citations and internal brackets and quotation marks omitted).[2] Conduct that is "merely offensive" cannot violate Title VII.
 
 
 15
 "[M]ere utterance of an ... epithet which engenders offensive feelings in an employee" ... does not sufficiently affect the conditions of employment to implicate Title VII. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive--is beyond Title VII's purview.
 
 
 16
 Harris, 114 S.Ct. at 370 (quoting Meritor, 477 U.S. at 67).
 
 
 17
 Writing for a unanimous Court in Harris, Justice O'Connor went on to provide a nonexhaustive list of factors to consider when determining whether a work environment is hostile or abusive:
 
 
 18
 [W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; [its effect on the employee's psychological well-being;] whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.
 
 
 19
 Id. at 371. Although Justice Ruth Bader Ginsburg, in her first opinion as an Associate Justice, urged her colleagues to focus the lower courts' inquiries "on whether the discriminatory conduct has unrea sonably interfered with the plaintiff's work performance," Harris, 114 S.Ct. at 372 (Ginsburg, J., concurring), the Court has refused to privilege that factor over all others. See Harris, 114 S.Ct. at 371 (stating that any "relevant factor ... may be taken into account, [but] no single factor is required"); id. at 372 (Scalia, J., concurring) (finding "no basis" in the statutory language for making unreasonable interference with the plaintiff's work performance "an absolute test").
 
 B
 
 20
 Most of Evenson's allegedly discriminatory conduct--noticing Kidwai's new boyfriend, telephoning her at home, wanting her to meet his mother, discussing vacation and leisure activities, asking her if she would cook dinner at her new home, driving rapidly while acting like a boor, and using profanity on at least one occasion--simply lacks the severity necessary to make out a Title VII sexual harassment claim. Even in combination, Evenson's alleged acts cannot be said to have altered the conditions of Kidwai's employment or to have created an objectively abusive work environment. See Harris, 114 S.Ct. at 370.
 
 
 21
 As the district judge noted at the summary judgment hearing, Kidwai's most disturbing allegation was that Evenson asked her, during a late evening phone call, whether she was in bed with someone. Taken in isolation, the allegation cannot rise to the requisite level of pervasiveness under Harris and Meritor. Even when all of Evenson's allegedly harassing conduct is viewed in its totality and in the light most favorable to the nonmoving party, we have concluded that, while Evenson's conduct may have offended Kidwai, and may even have been ungraceful to a "reasonable person," it was not severe or pervasive enough to create a work environment that a reasonable person would find hostile or abusive. Thus, defendants' conduct is beyond Title VII's purview. See Harris, 114 S.Ct. at 370.
 
 III
 
 22
 Kidwai also has claimed that McDonald's violated Title VII when it took two actions against her in retaliation for her complaining about Evenson's alleged harassment. See 42 U.S.C.Sec. 2000e-3(a). First, McDonald's placed her on administrative leave with pay while it investigated charges brought against her by five managers from the six stores that she supervised. Second, McDonald's suspended her for two weeks without pay for impeding that investigation by going ahead and contacting at least two of those managers despite repeatedly being told not to do so.
 
 
 23
 Of course, Kidwai's failure to make out a successful sexual harassment claim has not necessarily prevented her from prevailing on a claim of retaliation based on her harassment complaints. See Ross v. Communications Satellite Corp., 759 F.2d 355, 357 n. 1 (4th Cir.1985) ("An underlying discrimination charge need not be meritorious for a plaintiff to prevail on a claim of retaliation for opposition to the perceived discrimination.").
 
 
 24
 The allocation of the burdens of production and the order for the presentation of proof in Title VII retaliation cases are similar to those used in Title VII discriminatory-treatment cases. First, the plaintiff must establish, by a preponderance of the evidence, a prima facie case of retaliatory discrimination by proving that (1) she engaged in protected activity; (2) her employer took adverse employment action against her; and (3) a causal connection existed between the protected activity and the adverse action. See McNairn v. Sullivan, 929 F.2d 974, 980 (4th Cir.1991); Ross, 759 F.2d at 365; see also Lawrence v. Mars, Inc., 955 F.2d 902, 906 (4th Cir.1992). Establishment of the prima facie case would create a presumption that the employer unlawfully discriminated against the employee. Second, that presumption places upon the defendant the burden of producing admissible evidence that the adverse employment action was taken for a legitimate, nondiscriminatory reason which, if believed by the trier of fact, would support a finding that unlawful discrimination did not cause the adverse employment action. If the defendant does not carry that burden of production, the court would have to enter judgment for the plaintiff. If the defendant does carry the burden, the presumption raised by the prima facie case is rebutted and drops from the case. Third and finally, the plaintiff would bear the ultimate burden of persuading the trier of fact that the defendant-employer intentionally retaliated against her because she engaged in a protected activity. See McNairn, 929 F.2d at 980; Ross, 759 F.2d at 365-66; see also St. Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742, 2746-50 (1993).
 
 
 25
 Assuming (without deciding) that Kidwai has established a prima facie case, she cannot show that her complaints of sexual harassment triggered either of the actions taken by McDonald's. On the record below, it is uncontested that both of McDonald's actions--placing Kidwai on paid administrative leave while it investigated charges against her, and later suspending her for two weeks without pay because she had impeded the investigation--were reasonable acts for conducting an appropriate investigation.
 
 
 26
 McDonald's has produced admissible evidence of a legitimate, nondiscriminatory reason for placing Kidwai on paid administrative leave: it sought to investigate charges brought against her by several store managers working under her supervision. Kidwai has produced no evidence in response, and therefore she cannot meet her ultimate burden of proving that her complaints of sexual harassment triggered McDonald's decision to place her on administrative leave.
 
 
 27
 McDonald's also produced admissible evidence that it suspended Kidwai for two weeks without pay because she had attempted to subvert the investigation by telephoning two of her subordinates while McDonald's was still conducting the inquiry, notwithstanding the fact that three upper-level McDonald's employees had explicitly instructed her at the outset not to attempt such contacts. Again, Kidwai has failed to produce any evidence in response, and therefore she cannot prove that her complaints of sexual harassment triggered the suspension. Hence, we affirm the district court's grant of summary judgment on the retaliation issue.
 
 IV
 
 28
 Accordingly, the district court's judgment is
 
 
 29
 AFFIRMED.
 
 
 
 [1]
 The court also dismissed two individual defendants to Kidwai's sexual harassment and retaliation claims, leaving McDonald's and five of its managerial employees as the remaining defendants
 
 
 [2]
 Sexual misconduct directly linked to the grant or denial of an economic quid pro quo also violates Title VII. See Meritor, 477 U.S. at 65. Kidwai, however, has alleged "hostile work environment" harassment, but not quid pro quo harassment