David E. BENEKRITIS, Plaintiff,

v.

R. Earl JOHNSON, and Darlington
County School District,
Defendants.

Civ.A. No. 4:93–3136–22.

United States District Court,
D. South Carolina,
Florence Division.

April 11, 1995.

A. Christopher Potts, Charleston, SC, for plaintiff.

Laurence B. Orr, Florence, SC, for D.C.S.D.

Joseph McLean, Florence, SC, for R. Earl Johnson.

## ORDER

CURRIE, District Judge.

This is a case of alleged sexual harassment arising out of events occurring during a pick-up basketball game played by Plaintiff, a now discharged male teacher, and another male teacher. Plaintiff advances claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and several state causes of action. Jurisdiction is alleged to be based on federal question jurisdiction, pursuant to 28 U.S.C. § 1331.[1]

The matter is before the court on Defendant Darlington County School District's Motion for Summary Judgment. The court has also raised a subject matter jurisdiction issue *sua sponte* upon the court's examination of the pleadings and briefs. By order filed March 17, 1995, the court directed both par-

---

1. It also appears that diversity of citizenship exists, as Plaintiff's Complaint alleges he is a citizen and resident of a state other than South Carolina and both defendants are citizens and residents of South Carolina.

ties to file memoranda of law addressing whether alleged same-sex sexual harassment constitutes a cognizable claim under Title VII.

The court has now reviewed the briefs, depositions, and other materials and studied the applicable law.

For the reasons given below, the court reaches the following conclusions. Plaintiff's First Cause of Action against Defendants Darlington County School District (hereinafter "DCSD") and Johnson for alleged sexual harassment under 42 U.S.C. § 2000e–5 is not a viable claim under Title VII, and therefore must be dismissed. Although Plaintiff's Third Cause of Action against DCSD for alleged retaliatory discharge in violation of Title VII, 42 U.S.C. § 2000e–3 presents a cognizable federal claim, Plaintiff has failed to present a genuine issue for trial on that claim and summary judgment is appropriate. The court's dismissal of all federal claims leaves only the state law causes of action for resolution, for which diversity jurisdiction appears to exist. Summary judgment is granted to DCSD on Plaintiff's Second Cause of Action for assault and battery.[2] Summary judgment is also granted to DCSD on Plaintiff's Fourth, Fifth and Sixth Causes of Action for violation of the Whistle Blowers Act, S.C.Code Ann. § 8–27–10 *et seq.*, wrongful discharge, and breach of the implied covenant of good faith and fair dealing.

## BACKGROUND

The following facts are drawn from the complete record before the court, including all pleadings, briefs, affidavits, depositions, or other filings. All inferences are drawn in Plaintiff's favor.

Plaintiff, a Canadian, began teaching in 1977. Between that period and 1992, when he began teaching in South Carolina, Plaintiff had a sporadic teaching career, and taught at six different schools in locations throughout the United States and Canada. In addition, during that period Plaintiff pursued other occupations, e.g., maintaining a lawn service or building guitars, and did not teach. When Plaintiff worked as a teacher, it was generally for one year periods during which time Plaintiff did not attempt to pursue full state accreditation. In September 1991, Plaintiff submitted an application for a teaching position with DCSD. He was interviewed, but not hired for that year. He was invited back for interview for the 1992–93 school year. He did not execute a new application at the time of the second interview. Plaintiff's application included the following question:

> "Have you ever been dismissed/nonrenewed from any employment? _yes _no
>
> If yes, explain. _____"

Def's Exh. 3, Def's Memo in Support of Summary Judgment. Plaintiff checked the answer "no" and drew a line through the line given for explanation immediately below. On the same page of the application, the statement "I understand that any misrepresentation or omission of facts on the application or during the employment process is cause for forfeiture of employment consideration or termination, if employed" appeared before Plaintiff's signature. Plaintiff was ultimately hired in July 1992 as a math teacher at Mayo High School. He executed a one year written employment contract, extending from August of 1992 to August 1993.

The Mayo High School principal asked several more experienced teachers, including Defendant Renny Earl Johnson, to help orient the new teachers. According to Plaintiff, Johnson's role was to answer his questions, assist him in learning the policies and procedures of the school, and to offer any additional help. Plaintiff contends that Johnson served as his mentor and came into daily contact with him.

As an after school activity, Johnson played pickup basketball in the gymnasium of the First Baptist Church in Darlington, approximately one mile from the school's premises. Few, if any, of the other players were school district employees.[3] Plaintiff alleges that on two occasions in the fall of 1992 during these

---

**2.** Defendant Johnson has not moved for summary judgment on the assault and battery claim.

**3.** In fact, during the second alleged sexual assault on Plaintiff occurring October 15, 1992, most of the players besides Plaintiff and Johnson were Baptist ministers.

games Johnson sexually harassed him "by placing his genitals against Plaintiff's backside," (Complaint, ¶ 14) and "by placing his hand on Plaintiff's genitals," (*Id.* ¶ 16).

Plaintiff did not report the first such incident of alleged sexual assault because he was not sure whether it was intentional and he chose to give Johnson the benefit of the doubt. However, a few days after the alleged October 15, 1992, incident he timely reported all such incidents to the vice-principal and principal of Mayo High School, the school district superintendent, and to the Darlington County Police Department. Plaintiff swore out an arrest warrant for Johnson on the charge of criminal sexual conduct. The Darlington County Police Department conducted an investigation, and a preliminary hearing was held at which time the court dismissed all charges.

During its investigation of Plaintiff's criminal complaint, the Darlington County Police Department requested information about Plaintiff from the Hernando County Sheriff, sheriff of a county in which Plaintiff had intermittently resided. A report was transmitted to the Darlington Police.[4] Following receipt of such report, Dr. Wilson, Director of Personnel, was asked to check Plaintiff's employment background. When Dr. Wilson contacted the Delores Parrott Junior High School in Brooksville, Florida, a school at which Plaintiff taught between August 1980–June 1981, he was informed Plaintiff had experienced personal problems with the administration[5] and that his contract had been nonrenewed for the succeeding year. Wilson reported the information to the superintendent and a decision was made to suspend Plaintiff without pay with recommendation for dismissal. The School Board conducted an investigation and held a full adversarial hearing in which Plaintiff offered evidence and cross-examined witnesses on January 5, 1993. The Board found Plaintiff had misrepresented matters on his employment applica-

tion and ordered his termination. The Chairman of the School Board issued a five-page order of findings of fact and conclusions of law pertinent to the dismissal. Exh. 1, Def's Memo in Support of Summary Judgment. Plaintiff denies making any false statements on his employment application, and asserts that DCSD's cited reasons for termination are pretextual.

## PROCEDURAL HISTORY

On or about March 5, 1993, Plaintiff timely filed a complaint of sexual harassment and retaliation with the South Carolina Human Affairs Commission. He received his right to sue letter on October 22, 1993, and instituted suit within ninety days.

Plaintiff's Complaint, filed November 30, 1993, asserts six causes of action. The first claim is against Defendant Johnson, who Plaintiff alleges was his supervisor and mentor, and DCSD for sexual harassment, pursuant to 42 U.S.C. § 2000e–2. The second claim is against the same defendants for assault and battery. The third cause of action, against DCSD, is for retaliatory discharge, pursuant to 42 U.S.C. § 2000e–3. The fourth cause of action is against DCSD based on an alleged violation of the state Whistleblower's Act, S.C.Code Ann. §§ 8–27–10 *et seq.* The fifth cause of action is against DCSD for wrongful discharge under the written employment contract. The sixth cause of action against DCSD is for breach of the implied covenant of good faith and fair dealing under the written employment contract.

Johnson denies that he was Plaintiff's mentor or that he sexually harassed Plaintiff. Moreover, he interposes a counterclaim for attorney's fees and costs in this proceeding, pursuant to the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C.Code Ann. § 15–36–10. Defendant DCSD denies that Johnson supervised or sexually harassed

4. This report, Exh. 5 to Pltf's Memo in Opposition to DCSD's Motion for Summary Judgment, states, in part, that "I further checked our records section and found six reports filed, four of which were for battery, one for harassment and one for trespass. Mr. Benekritis was the victim in all of the reports filed."

5. This report also indicated that Plaintiff had purportedly been disciplined for using profanity in the classroom.

Plaintiff, and asserts several affirmative defenses, including, that it is immune under the South Carolina Tort Claims Act, that Plaintiff was discharged for his affirmative misrepresentations on his employment application, and that Plaintiff's exclusive remedy is pursuant to the South Carolina Workers' Compensation Law. Defendant DCSD also seeks attorney's fees and costs under S.C.Code Ann. § 15–36–30.

TITLE VII SEXUAL HARASSMENT
CLAIM

■■■■ The threshold question the court has raised is whether Plaintiff has any relief under Title VII for his complaints of same-sex sexual harassment. Title VII prohibits discrimination in the workplace on the basis of sex: It shall be an unlawful employment practice for an employer to ... discriminate against any individual ... because of such individual's ... sex. 42 U.S.C. § 2000e–2. The statute proscribes various forms of sexual harassment in the workplace, including both hostile or abusive environment claims as well as cases in which sexual misconduct is directly linked to the grant or denial of an economic quid pro quo. *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

Several district courts and one circuit court of appeals have considered the issue of same-sex sexual harassment. Early district court opinions found that same-sex sexual harassment violated Title VII, *see Wright v. Methodist Youth Services, Inc.,* 511 F.Supp. 307 (N.D.Ill.1981) (quid pro quo male-male harassment violates Title VII); and *Joyner v. AAA Cooper Transportation,* 597 F.Supp. 537 (M.D.Ala.1983) (quid pro quo male-male harassment violates Title VII). Beginning, however, with the decision in *Goluszek v. Smith,* 697 F.Supp. 1452 (N.D.Ill.1988) (male-male hostile environment sexual harassment not actionable under Title VII, but retaliato-

ry discharge claim is), courts began considering the legislative history of Title VII for evidence of congressional intent to provide a Title VII remedy for same-sex sexual harassment. In concluding that no Title VII remedy extended to same-sex sexual harassment, *Goluszek* reasoned:

> [T]he defendant's conduct was not the type of conduct Congress intended to sanction when it enacted Title VII. The goal of Title VII is equal employment opportunity. That goal is accomplished in part by imposing an affirmative duty on employers to maintain a working environment free of discriminatory intimidation. The discrimination Congress was concerned about when it enacted Title VII is one stemming from an imbalance by the powerful which results in discrimination against a discrete and vulnerable group.... The "sexual harassment" that is actionable under Title VII "is the exploitation of a powerful position to impose sexual demands or pressures on an unwilling but less powerful person."

*Id.* at 1456 (citations omitted). *Goluszek* was relied upon by the Fifth Circuit Court of Appeals in *Garcia v. Elf Atochem North America,* 28 F.3d 446 (5th Cir.1994), which found that harassment by male supervisor against male subordinate was not cognizable under Title VII, even if the alleged harassment had sexual overtones. Since *Garcia,* most reported opinions appear to be following its finding. *See Vandeventer v. Wabash Nat'l Corporation,* 867 F.Supp. 790 (N.D.Ind. 1994) (male-male quid pro quo and hostile environment claims not cognizable); *Myers v. El Paso,* 874 F.Supp. 1546 (W.D.Tex.1995) (female-female hostile environment claim not actionable); *Hopkins v. Baltimore Gas & Elec. Co.,* 871 F.Supp. 822 (D.Md.1994) (male bisexual-male hostile environment claim not cognizable under Title VII, although retaliatory discharge claim is).[6]

**6.** Two decisions that have rejected *Garcia* include *Prescott v. Independent Life & Accident Ins. Co.,* 878 F.Supp. 1545 (M.D.Ala.1995) and *McCoy v. Johnson Controls World Servs., Inc.,* 878 F.Supp. 229 (S.D.Ga.1995). *Prescott* concluded that Congress' choice in using the unmodified word "sex" when referring to prohibited discrimination evinced a gender-neutral term ex-

tending to broader forms of harassment than heterosexual. 878 F.Supp. at 1550. *McCoy,* applying the Eleventh Circuit's prima facie test for sexual harassment under *Henson v. Dundee,* 682 F.2d 897 (11th Cir.1982), reasoned that harassment that would not have occurred but for the fact of the victimized employee's sex was harassment "based upon sex" and therefore, proscribed

After examining the above-cited authorities, the court accepts the reasoning of the district court in *Goluszek* and the Fifth Circuit Court of Appeals in *Garcia*. Accordingly, Plaintiff's First Cause of Action against DCSD and Johnson is dismissed because it is not a cognizable Title VII claim.

## TITLE VII RETALIATORY DISCHARGE CLAIM

■ The court's conclusion above that Plaintiff has no Title VII sexual harassment claim is not, however, controlling of the question whether he has a Title VII retaliatory discharge or "opposition clause" claim. *Kidwai v. McDonalds' Corp.*, 1994 WL 136971 (4th Cir.1994); *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 357 n. 1 (4th Cir.1985) ("[a]n underlying discrimination charge need not be meritorious for a plaintiff to prevail on a claim of retaliation."). Several courts that have found same-sex sexual harassment claims outside the scope of Title VII have nevertheless concluded that they may form the basis for retaliatory discharge claims. *Hopkins v. Baltimore Gas & Elec. Co.*, 871 F.Supp. 822 (D.Md.1994); *Vandeventer v. Wabash Nat'l Corp.*, 867 F.Supp. 790 (N.D.Ind.1994); *Goluszek v. H.P. Smith*, 697 F.Supp. 1452 (N.D.Ill.1988). This conclusion draws support from the statutory mandate of 42 U.S.C. § 2000e–3(a), which extends a retaliatory discharge claim to anyone participating in proceedings under Title VII. Here, Plaintiff initiated a proceeding under Title VII, which the court has concluded is not cognizable as a matter of law. Nevertheless, the court finds Plaintiff may pursue an independent action for retaliatory discharge. It suffices that Plaintiff has shown he held a reasonable, although mistaken, belief that such conduct violated the statute. *Kralowec v. Prince George's County*, 503 F.Supp. 985 (D.Md.1980), *aff'd*, 679 F.2d 883 (4th Cir.1982).

■ To establish a prima facie case of retaliatory discharge under 42 U.S.C. § 2000e–3, Plaintiff must show: (1) that he opposed an employment practice unlawful within the meaning of Title VII or that he participated in a proceeding under Title VII; (2) that he suffered an adverse action by his employer; and (3) that the adverse action was motivated in part by the protected activity or the opposition activity. *McNairn v. Sullivan*, 929 F.2d 974, 980 (4th Cir.1991); *Dwyer v. Smith*, 867 F.2d 184 (4th Cir.1989); *Klein v. Trustees of Indiana Univ.*, 766 F.2d 275, 280 (7th Cir.1985).[7] If the plaintiff establishes a prima facie case, the burden of production shifts in the manner outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The burden of persuasion is with the plaintiff at all times. *Id.*

■ Once the plaintiff has established the prima facie case, the defendant must articulate a legitimate, nondiscriminatory reason for terminating the plaintiff. This burden requires the defendant to "raise a genuine issue of fact as to whether it discriminated against plaintiff." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the defendant meets that burden, the burden of production shifts back to the plaintiff and joins with the burden of persuasion to prove that the defendant's articulated reasons are pretextual.

■ Courts have recognized that the burden on the opposition-clause plaintiff at the prima facie stage is relatively minimal. *Mundy v. Palmetto Ford, Inc.*, 998 F.2d 1010, 1993 WL 280340 (4th Cir.1993) (Phillips, J., dissenting). The court concludes based on the proximity of time between Plaintiff's reporting of the alleged sexual harassment and his discharge, and the fact that the investigation into Plaintiff's background, culminating in his discharge, would not have occurred but for Plaintiff's opposition activity, that a sufficient causal link exists between the opposition activity and

by Title VII. This court respectfully declines to follow the reasoning of these cases.

7. An employee need not have instituted formal Title VII proceedings at the time of discharge in order to invoke the protection of the opposition clause; informal complaints to the employer will suffice. *Armstrong v. Index Journal Co.*, 647 F.2d 441 (4th Cir.1981).

Plaintiff's termination to establish a prima facie case.[8]

■ As to DCSD's reason for terminating Plaintiff, it was the school district's consistent practice not to employ any teacher who had misrepresented facts or omitted material matters from the employment application, or to employ anyone who had been dismissed or nonrenewed from another school. Wilson Depo. at 100–104. The employment application executed by Plaintiff asked his reason for leaving each prior employment. Plaintiff indicated his reason for leaving Delores Parrott Junior Hight School as "to accept a position in Albany, Georgia." As noted above, the application also included the question and response, quoted above, concerning the dismissal/nonrenewal, to which Plaintiff responded in the negative.

The investigation conducted into Plaintiff's background determined, however, that Plaintiff had clearly been nonrenewed from his employment in Brooksville, Florida. It also revealed that Plaintiff had filed a two-part grievance concerning a four-day suspension, and his nonrenewal. The grievance was submitted to formal arbitration and a decision was rendered by an American Arbitration Association arbitrator on November 20, 1981, upholding the nonrenewal. In light of Plaintiff's active grieving of his nonrenewal, he doubtless was fully informed of the status of his separation from Delores Parrott Junior High School.

In the School Board's order upholding Plaintiff's dismissal, the Board concluded, in part, that:

> Mr. Benekritis' response on his employment application that he had never been nonrenewed was false. Further, Mr. Benekritis' statement that his reason for leaving the Brooksville Florida School District "to accept position in Albany, Georgia" was also false and omitted the fact that his contract was not renewed.

> . . . . .

> The Board specifically finds that Mr. Benekritis' provision of a false statement re-

garding the nonrenewal of his employment contract was knowing and intentional.

. . . . .

> The Board further finds that if Mr. Benekritis had provided a truthful and accurate employment application, including information regarding the nonrenewal of his employment with the Brooksville, Florida School District, he would not have been employed by the School District for the 1992–93 school year.

> [T]he Board further finds that the *sole and exclusive* basis of the recommendation . . . to terminate or rescind Mr. Benekritis' teaching contract was his submission of an application for employment which contained misrepresentations and omissions of fact. *The Board specifically rejects the contention of Mr. Benekritis that the recommendation for the termination or recision [sic] of his contract was related in any manner to his filing of criminal charges against another School District employee. The Board hereby recognizes and affirms the right of every employee of the School District to utilize criminal or civil processes.*

Exh. 1, Def's Memo in Support of Motion for Summary Judgment. After full discovery of his case, Plaintiff has failed to adduce a shred of evidence that the preceding reason was not the "sole and exclusive" basis for his discharge or that DCSD's cited reason is pretext. His assertion that he has been penalized for protesting sexual harassment is based on sheer speculation, and the proximity in time between his protest and his suspension. He has failed to adduce any evidence showing that he has been unfairly singled out for disciplinary action, or that DCSD's response was anything other than consistent with its established policy. He ignores the fact that the intervening investigation into his employment at Delores Parrott Junior High School provided a completely adequate, independent and sufficient basis for his dismissal. The court therefore finds that DCSD has put forth a legitimate, non-

---

8. Indeed, DCSD does not argue that Plaintiff has not made out a prima facie case, as its memorandum has concentrated solely on its perceived

legitimate, nondiscriminatory basis for discharge.

discriminatory reason for Plaintiff's termination, which Plaintiff has failed to show was pretextual. Accordingly, DCSD's Motion for Summary Judgment on this claim is granted.

## ASSAULT AND BATTERY

■ Plaintiff's Second Cause of Action against Johnson and DCSD alleges liability for assault and battery. Plaintiff alleges Johnson was acting as agent for the school district when he committed the alleged assault.

DCSD is a governmental entity whose liability is limited by the South Carolina Tort Claims Act, S.C.Code Ann. § 15–78–10 et seq. Liability under the Act extends only for actions of employees acting within the scope of their official duties. The Act defines "scope of official duty" as "1. Acting in and about the official business of a governmental entity and 2. performing official duties." S.C.Code Ann. § 15–78–30(i).

The court finds a complete absence of any evidence in the record to suggest that an after-school pickup basketball game conducted in a church gymnasium one mile from the school and attended primarily by church officials was official business of DCSD or that its employee participants were performing official duties. Accordingly, no liability exists under the Act and summary judgment to DCSD is appropriate on this claim.[9]

## REMAINING STATE LAW CLAIMS AGAINST DCSD

Disposition of the remaining claims is governed by traditional Rule 56, Fed.R.Civ.P., standards. Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Whenever the party defending against the motion bears the ultimate burden of proof on a material issue, the moving party need offer no proof and may rely upon deficits in the

defending party's evidence. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden of the party opposing summary judgment is satisfied only by proof of specific facts that are developed as a forecast of hard evidence based upon competent documents and testimony. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1988). A dispute about a material fact is not "genuine" unless the evidence taken as a whole is such that a rational jury could return a verdict for the opposing party. *Id.* While a party opposing summary judgment is entitled to all reasonable inferences in its favor, an inference is only reasonable if it is plausible and the evidence is such that a rational jury, given the entire record, could draw that inference. *Id.* The trial court should grant summary judgment against a party who has failed to make a showing sufficient to establish the existence of an essential element of the party's case, and upon which that party bears the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

Plaintiff's Fourth Cause of Action is based on the South Carolina Whistle Blowers Act, S.C.Code Ann. § 8–27–10 et seq. This Act makes it unlawful for a public body to discharge or otherwise terminate an employee for reporting a violation of any state or federal law which involves a public body or an employee of a public body. *Id.* § 8–27–20. The Act does not preclude a public body from discharging an employee for causes independent of those prohibited by the Act. *Id.* 8–27–40.

For the same reasons cited above by the court in its dismissal of the Title VII retaliatory discharge claim, the court finds summary judgment appropriate on the Whistle Blowers Act claim. Plaintiff has failed to produce any evidence that DCSD's articulated reason for terminating Plaintiff based on misrepresentation and omission in his employment application was not genuine, or that the termination was actuated based on Plaintiff's "reporting a violation of any state or federal law" involving DCSD or an employee

---

9. Even if the court found that Johnson's actions were within the scope of his official duties, Plaintiff's recovery against his former employer for assault and battery based on a co-employee's action would be under the Workman's Compensation remedy. *Dickert v. Metropolitan Life Ins. Co.,* 428 S.E.2d 700 (1993).

of DCSD. Plaintiff's assertions are, again, wholly conjectural and utterly without foundation in the record. No rational jury could, based on the entire record in this matter, draw the conclusion Plaintiff urges. Accordingly, summary judgment is appropriate on this claim.

 Plaintiff's Fifth Cause of Action for wrongful discharge is based on his one-year Employment Contract, Exh. A to Def's Memo in Support of Motion for Summary Judgment. The Contract provided, in part, that:

> This contract shall also be terminated or not renewed by the Board of Education for failure to follow the policies of the School District, the rules and regulations of the local Board, the State Board of Education, and the state statutes, or for conduct unbefitting a member of the teaching profession, or for professional conduct which hinders performance, or evidences unfitness for teaching or insubordination.

The application executed by Plaintiff contained an express notice that "misrepresentation or omission of facts" on the application would be grounds for immediate discharge. The court finds that the Contract and the application were clear and unambiguous, and that Plaintiff's concealment of his nonrenewal history at Delores Parrot Junior High School represented an omission of material fact.[10] Plaintiff has not produced a scintilla of evidence that DCSD acted in breach of the express terms of the contract, and wrongfully discharged him. Nor has Plaintiff produced any evidence to show a nexus between his protest of the alleged sexual harassment and his ultimate discharge.

In *Moshtaghi v. The Citadel,* 443 S.E.2d 915 (Ct.App.1994), a Citadel professor who protested an allegedly tainted college elec-

tion brought suit against the college claiming, among other things, breach of contract, wrongful discharge in violation of public policy, and breach of the implied covenant of good faith and fair dealing. The professor claimed discharge for engaging in constitutionally protected speech. In affirming grant of summary judgment on the contract, wrongful discharge, and breach of implied covenant claims, the Court of Appeals found that the college had demonstrated that its discharge of the professor was motivated solely by its discovery that the professor had violated the express prohibition against dual employment contained in his employment contract. The court found a complete absence of evidence of a nexus between the discharge and the exercise of constitutional activity and concluded no jury issue existed.

The situation in the present case is highly analogous to the situation in *Moshtaghi* and supports this court's conclusion that summary judgment on all contract-related claims is appropriate, including Plaintiff's Fifth and Sixth Cause of Action for wrongful discharge and breach of implied covenant of good faith and fair dealing.

### CONCLUSION

Based on the foregoing reasons and the cited authorities, IT IS THEREFORE ORDERED that Defendant Darlington County School District's Motion for Summary Judgment be granted in full. IT IS FURTHER ORDERED that Plaintiff's First Cause of Action against Defendant Johnson be dismissed.

IT IS SO ORDERED.

---

**10.** Plaintiff's eleventh hour, strained argument that he interpreted "dismissed/nonrenewed" on the application to mean only those teachers who had been fired, and his untimely enlistment of two expert linguists to show ambiguity in the application are entirely unavailing. Although this court need not consider the affidavits of witnesses Stygall and Shuy as the linguists were retained long after discovery had expired, after Defendant's Motion for Summary Judgment had been filed, and after Magistrate Judge Carr had already denied Plaintiff's Motion to Re-open Discovery, the court has reviewed them and finds

them of no consequence. Even assuming, as Plaintiff argues, that the "dismissed/nonrenewed" question was ambiguous, DCSD's cited adequate and independent basis for discharge was that Plaintiff omitted material information from the application. Even if Plaintiff had interpreted the application as he contends, his failure to disclose his nonrenewal experience on the line immediately given below for such explanations constituted willful omission for which DCSD exercised its rights to discharge Plaintiff, as he had been informed would happen for such omission.