**Ford W. PRESCOTT, Plaintiff,**

v.

**INDEPENDENT LIFE AND ACCIDENT INSURANCE CO., et al., Defendants.**

**No. CV–94–A–383–N.**

United States District Court, M.D. Alabama, Northern Division.

Feb. 8, 1995.

Jeffery C. Duffey, Montgomery, AL, Joseph (Jay) Brady Lewis, Montgomery, AL, for plaintiff.

Bruce Johnson Downey, III, Capell, Howard, Knabe & Cobbs, P.A., Montgomery, AL, Ruth W. Woodling, Christine E. Howard, Fisher & Phillips, Atlanta, GA, for Independent Life and Acc. Ins. Co.

Alvin T. Prestwood, Linda Smith Webb, James M. Sizemore, Jr., Volz, Prestwood, Hanan & Sizemore, Montgomery, AL, for T.L. Meeks.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, District Judge.

### I. INTRODUCTION

This cause is before the court on Defendants' Motions for Summary Judgment filed on November 14, 1994.

The plaintiff, Ford Prescott ("Prescott") brought this suit on March 31, 1994 alleging violations of 42 U.S.C. § 2000e, *et seq.*, commonly known as Title VII of the Civil Rights Act of 1964, as amended. Specifically, plaintiff alleges a cause of action for *quid pro quo* sexual harassment.

Plaintiff named as defendants both the company he formerly worked for, Independent Life Insurance Co. ("Independent Life"), as well as his supervisor at the company, T.L. Meeks ("Meeks"). Plaintiff also alleged a pendant state law claim against his supervisor for assault and battery and invasion of privacy.

The defendants claim that the plaintiff was terminated for legitimate, non-discriminatory reasons. They also argue that, should the court rule against their Motion for Summary Judgment, plaintiff's recovery should be limited by the after-acquired evidence rule.

For the reasons set forth below, the court finds that Defendant Independent Life's Motion for Summary Judgment is due to be DENIED. Defendant Meeks' Motion for Summary Judgment as to the Title VII claims against him is due to be GRANTED. Defendant Meeks' Motion for Summary Judgment as to the state law claims against him is due to be DENIED.

### II. FACTS

Many of the facts of this case are in dispute. Therefore, except where noted, the court will rely on the facts as laid out by the plaintiff in his submissions, including his affidavit.[1]

---

1. Because the plaintiff has alleged that these events have occurred, and has supported the allegations through a sworn affidavit, the court is bound at this stage to accept the allegations and cast the facts in the light most favorable to the plaintiff. Whether the plaintiff will be able to

Plaintiff was hired by the defendant insurance company in 1980. He began as an insurance agent, but eventually worked his way up to the position of Staff Sales Manager in the Montgomery office. In 1992, defendant Meeks became the District Manager for Independent Life in Montgomery. As such, Meeks was Prescott's direct supervisor.

According to the plaintiff, beginning in November of 1992 and continuing until plaintiff's termination in May, 1993, the defendant Meeks subjected him to numerous unwanted sexual advances. These advances allegedly took the form of unwanted touchings, implicit threats to plaintiff's status at the company, as well as implicit promises of advancement. Plaintiff also alleges an elaborate plan concocted by Meeks to win the plaintiff over. Allegedly, when the plaintiff refused to give into the defendant's demands, defendant determined to get rid of the plaintiff. Plaintiff alleges that Meeks contrived a false record against the plaintiff as part of this scheme to eliminate him.

As stated above, defendants dispute the facts alleged by the plaintiff. According to them, Prescott was a disruptive employee. They allege that plaintiff was a gossip, who criticized his supervisor's management style and decisions and openly speculated as to aspects of Meeks' personal life, including his sexual orientation. Defendants contend that it was Prescott's insubordination that resulted in his termination on May 12, 1993.

## III. STANDARD FOR SUMMARY JUDGMENT

According to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is only appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating to the court the basis for the motion and identifying those portions of the pleadings and evidentiary submissions which show an absence of any genuine issue of material fact. *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 918 (11th Cir.1993), *rehearing denied,* 16

F.3d 1233 (11th Cir.1994). If the ultimate burden of persuasion at trial rests on the non-movant, the party seeking summary judgment can meet this standard either by demonstrating that the non-movant's evidence is not sufficient to establish an essential element of his or her claim, or by submitting affirmative evidence that negates an essential element of the claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The burden then shifts to the non-movant to establish the existence of an essential element to the claims, and on which they bear the burden of proof at trial. *Id.* To satisfy this burden, the non-movant cannot rest on the pleadings, but must by affidavit or other appropriate means, set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e).

In deciding a motion for summary judgment, the court must determine whether there exists genuine, material issues of fact to be tried. If there are not, the movant is entitled to a judgment as a matter of law. *See Dominick v. Dixie Nat'l Life Ins. Co.,* 809 F.2d 1559 (11th Cir.1987). "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant." *Hairston,* 9 F.3d at 919 (citations omitted). It is the substantive law that identifies those facts which are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). *See also DeLong Equip. Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499, 1505 (11th Cir.1989), rehearing denied, 896 F.2d 560 (11th Cir.1990).

All the evidence and the inferences from the underlying facts must be viewed in the light most favorable to the non-movant. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990). *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co. v.*

establish these allegations at trial is not relevant        on a Motion for Summary Judgment.

*M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir.1983). *See also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). When the court considers a motion for summary judgment, it must avoid weighing conflicting evidence, making credibility determinations and deciding material factual issues. *Hairston,* 9 F.3d at 919. In the particular case of an employment discrimination claim, which often requires ascribing motive or intent to a party, the court notes that decisions in this circuit have expressed some hesitation in granting summary judgment. *See, e.g., Batey v. Stone,* 24 F.3d 1330 (11th Cir.1994). With these rules and principles of law in mind, the court will determine whether summary judgment is appropriate or whether there exist genuine issues of material fact necessitating a trial.

## IV. SEXUAL HARASSMENT

### A. *Independent Life*

■ The elements that a plaintiff must satisfy in order to make out a prima facie case of sexual harassment under Title VII depends on the type of harassment alleged, *quid pro quo* or hostile environment. *See Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). In this case, the plaintiff has specifically alleged only *quid pro quo* sexual harassment. Under this theory, the plaintiff seeks to establish that a supervisor required sexual favors in return for job benefits, including not being terminated. *See Steele v. Offshore Shipbuilding,* 867 F.2d 1311, 1325–1316 (11th Cir.1989), *rehearing denied,* 874 F.2d 821 (11th Cir.1989).

■ The elements that a plaintiff must show to make out a claim under *quid pro quo* sexual harassment are the following: (1) the employee belongs to a protected group;[2] (2) the employee was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; and (4) the harassment altered the terms and conditions of employment. *See Virgo v. Riviera Beach Assoc., Ltd.,* 30 F.3d 1350, 1361 (11th Cir.1994). Unlike a suit for hostile work environment, a plaintiff proceeding under a theory of *quid pro quo* harassment need not prove knowledge on the part of the employer. *See Steele,* 867 F.2d at 1316; *Henson v. City of Dundee,* 682 F.2d 897, 909–910 (11th Cir.1982); *Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1564 (11th Cir.1987). As stated by the court in *Steele,* "In a *quid pro quo* case, the corporate defendant is strictly liable for the supervisor's harassment. This is logical. When a supervisor requires sexual favors as *quid pro quo* for job benefits, the supervisor, by definition, acts as the company." *Steele,* 867 F.2d at 1316.[3]

However, Independent Life has brought to the court's attention a recent decision from a district court in another circuit that held that homosexual sexual harassment was not actionable under Title VII. *Hopkins v. Baltimore Gas & Electric Co.,* 871 F.Supp. 822 (D.Md.1994). The court will briefly address this contention.

■ In the instant case, plaintiff has alleged *quid pro quo* sexual harassment. As stated above, under that form of harassment, the plaintiff claims that a supervisor required sexual favors for advancement, or for contin-

---

2. This element, as the defendant Independent Life points out, might very well be impossible *not* to establish. Title VII prohibits discrimination based on sex, and it is unquestioned that Title VII prevents "reverse discrimination" against men. *See, e.g., Pierce v. Commonwealth Life Insurance Co.,* 40 F.3d 796 (6th Cir.1994). Therefore, it appears that in order to be in a "protected group," one must be either male or female.

3. Defendant Independent Life has cited two cases in its reply brief that it argues supports its proposition that an effective sexual harassment policy that is not used by an employee will insulate the employer from liability in a case such as the one before the court. *Young v. Mariner*

*Corp.,* 65 Fair Emp.Prac.Cas. (BNA) 555, 1991 WL 172927 (N.D.Ala.1991); *Sparks v. Regional Medical Center Board,* 792 F.Supp. 735 (N.D.Ala. 1992). Having reviewed those cases, the court finds that they do not stand for the proposition stated by Independent Life.

In *Young,* the court specifically noted that the plaintiff "did not assert any claim of '*quid pro quo*' sexual harassment." *Young,* 1991 WL 172927, *33. In *Sparks,* the court ruled that "prompt and remedial action by the employer after discovering the *quid pro quo* harassment may mitigate damages, but will *in no way affect the employer's liability.*" *Sparks,* 792 F.Supp. at 743 (emphasis added).

ued employment. The court believes that the gender of the person who requests such favors is not relevant. Under *quid pro quo* sexual harassment, all that is required is a supervisor who conditions the terms of employment on the employee's giving in to the supervisor's sexual demands. In fact, homosexual *quid pro quo* sexual harassment has been recognized for some time. *See, Joyner v. AAA Cooper Trans.*, 597 F.Supp. 537, 542 (M.D.Ala.1983), affirmed without opinion, 749 F.2d 732 (11th Cir.1984); *Wright v. Methodist Youth Services, Inc.*, 511 F.Supp. 307, 310 (N.D.Ill.1981).

Viewed from an alternative perspective, the court would still hold that same gender harassment is prohibited under Title VII. The *Hopkins* decision cited with approval a Fifth Circuit opinion that reached the same result. *Garcia v. Elf Atochem North America*, 28 F.3d 446 (5th Cir.1994). That Fifth Circuit opinion, in turn, relied at least in part on a case from the Northern District of Illinois. *Goluszek v. Smith*, 697 F.Supp. 1452 (N.D.Ill.1988).

According to the court in *Goluszek*, the issue that the court should address in deciding whether Title VII prohibits homosexual sexual harassment is power. *Id.* at 1456. That court felt that the problem that Congress sought to remedy was one in which a powerless group was disadvantaged by the dominant group. *Id.* Therefore the male plaintiff in *Goluszek* could not prevail because he was "a male in a male dominated environment." *Id.*[4] While this argument may be logically appealing, it is not the current state of anti-discrimination jurisprudence. If it were, a similar argument could be made when a white plaintiff attempts to sue for reverse discrimination under Title VII. That white plaintiff would have been at all times a member of the majority, a member of the "dominant" race. However, the Supreme Court "has consistently interpreted Title VII to proscribe racial discrimination in private employment against whites on the same terms as racial discrimination against nonwhites ..." *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 279, 96 S.Ct. 2574, 2578, 49 L.Ed.2d 493 (1976).[5]

The language of Title VII is clear. Congress chose to use the unmodified word "sex" when referring to the discrimination that is forbidden. This is a choice of an obviously gender neutral term, just as Congress chose to prohibit discrimination based on "race," rather than discrimination against African–Americans or other specific minorities. It seems clear to the court that had Congress intended to prevent only heterosexual sexual harassment, it could have used the term "member of the opposite sex." This way Congress would have accounted for both male female harassment and the much less frequent female-male harassment.

Therefore, Congress prohibited discrimination based on sex. This means that if a person receives discriminatory treatment from a company or a supervisor because of the employee's sex, Title VII has been violated. When a homosexual man propositions or

---

**4.** The court also points out that in *Goluszek*, the plaintiff alleged hostile environment sexual harassment rather than *quid pro quo* harassment. Additionally, the court did not actually find that Goluszek was singled out because of his sex. Rather, the court determined that there was sufficient evidence for a finding that, if he were a woman, the company would have taken steps to prevent the treatment that he received. *Id.* The facts in *Goluszek*, then are not sufficiently analogous to the facts as alleged in the instant case.

**5.** Despite this clear language, there are courts that have applied a heightened standard to whites claiming discrimination under Title VII. *See, e.g., Harding v. Gray*, 9 F.3d 150 (D.C.Cir. 1993). The court in *Harding* accepted a line of reasoning similar the court in *Goluszek*. According to the court in *Harding*, "Invidious racial discrimination against whites is relatively un-common in our society, and so there is nothing inherently suspicious in an employer's decision to promote a qualified minority applicant instead of a qualified white applicant." *Id.* at 153. In contrast, see *Ulrich v. Exxon Co. U.S.A.*, 824 F.Supp. 677 (S.D.Tex.1993). *Ulrich* discusses and criticizes the decisions applying a heightened standard. See *id.* at 683–684 (and cases cited therein). The opinion further chronicles the cases that have refused to apply a heightened standard, and follows these cases' reasoning. *Id.* at 684. Again, despite the interesting reasoning in both *Harding* and *Goluszek*, in which the court examines the power differential and the groups that Congress likely sought to protect, this approach is not consistent with the language, intent or interpretation of Title VII. *See McDonald*, 427 U.S. at 278–280, 96 S.Ct. at 2577–2579.

harasses a male subordinate, but does not similarly proposition or harass female workers, the male employee has been singled out because of his gender. But for his being male, the harassment would not have occurred.[6] *See, Wright,* 511 F.Supp. at 310.

The court therefore holds that homosexual sexual harassment as alleged in this case is actionable under Title VII under two rationales. First, in this instance it is alleged that the supervisor implicitly required sexual favors in return for continued employment. Second, the treatment that the plaintiff allegedly received was based on his gender.

■ Prescott has established a prima facie case of sexual harassment. Defendant Independent Life has admitted that Prescott belongs to a protected group (male).[7] He was allegedly the subject of unwanted sexual advances. These advances were based on his sex, and they altered the terms of his employment. The plaintiff has established

through his affidavits that there is a question of fact as to whether the statements allegedly made to him by Meeks were properly understood to be *quid pro quo* harassment or whether they concerned legitimate business related matters.

### B. *Meeks*

■ Until very recently, Eleventh Circuit law was clear in holding that Title VII suits brought against a person in his individual capacity were "inappropriate." *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991). Although a recent panel held to the contrary, *Busby* remains the law in this Circuit unless and until the issue is resolved otherwise *en banc.*[8] Accordingly, Meeks may not be sued under Title VII in his individual capacity.[9]

■ As for the suit against Meeks in his official capacity, according to the Eleventh

---

**6.** Interestingly, if a supervisor, male or female, created a hostile environment for all of the employees, this would not technically violate Title VII. There would be harassment, but it would not be based on gender. This would place a court in the difficult position of dismissing a Title VII suit if the defendant supervisor could show that in addition to harassing a plaintiff of one gender, he treated those of the other gender with similar disrespect. Because plaintiff in this case alleged *quid pro quo* sexual harassment, the court need not decide this issue. Additionally, there is no allegation in this instance that Meeks ever harassed any female employees.

**7.** *See* footnote 2, *supra.*

**8.** The issue of whether a plaintiff can maintain a suit under Title VII against an individual has caused a split in the federal circuits. Some courts have determined that individuals may be sued in their individual capacity. *See, e.g., Paroline v. Unisys Corp.,* 879 F.2d 100, 104 (4th Cir.1989), vacated in part on other grounds, 900 F.2d 27 (4th Cir.1990); *Jones v. Continental Corp.,* 789 F.2d 1225, 1231 (6th Cir.1990). An argument can be made that this reasoning has been strengthened by the 1991 amendments to Title VII which allowed plaintiffs to recover punitive damages. *See, e.g., Jendusa v. Cancer Treatment Centers of America, Inc.,* 868 F.Supp. 1006 (N.D.Ill.1994). However, other courts have held that the amendments did not alter past law, and that suits against individuals are not permitted. *See, e.g., Busby,* 931 F.2d at 772; *Garcia v. Elf Atochem North America,* 28 F.3d 446, 451 n. 2 (5th Cir.1994); *Miller v. Maxwell's International, Inc.,* 991 F.2d 583, 587 (9th Cir.1993); *Sauers*

*v. Salt Lake County,* 1 F.3d 1122, 1125 (10th Cir.1993).

The law in the Eleventh Circuit has been clear since *Busby.* Employee/agents may not be sued in their individual capacity under Title VII. *See Busby,* 931 F.2d at 772 ("Individual capacity suits under Title VII are ... inappropriate."); *see also, Yeager v. Norwest Multifamily, Inc.,* 865 F.Supp. 768, 770 (M.D.Ala.1994).

However, as noted above, an Eleventh Circuit panel recently published an opinion that appears to endorse the view that an employee who is determined to be an agent of the employer under Title VII may be sued in his individual capacity. *Cross v. Alabama,* 1994 WL 424303, *13–14 (11th Cir.1994).

The court notes, though, that the law in the circuit is that, "Where circuit authority is in conflict, the earliest panel opinion resolving the issue in question binds this circuit until the court resolves the issue en banc." *Clark v. Housing Auth. of Alma,* 971 F.2d 723, 726, n. 4 (11th Cir.1992). *See also, U.S. v. Dailey,* 24 F.3d 1323, 1327 (11th Cir.1994); *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc). Therefore, *Busby* controls until the circuit resolves the matter *en banc.*

**9.** The plaintiff, in his response to defendant's memorandum in support of his Motion for Summary Judgment, states that he agrees with the defendant's contention that he cannot be sued in his individual capacity. Additionally, plaintiff does not put forth any argument that Meeks' Motion for Summary Judgment for the Title VII claims against him in his official capacity ought to be denied.

Circuit, a suit under Title VII brought against an employee as agent of the employer is regarded as a suit against the employer itself. *Busby,* 931 F.2d at 772. *See also, Saville v. Houston County Healthcare Auth.,* 852 F.Supp. 1512, 1522 (M.D.Ala.1994). As a district manager, Meeks is an employer/agent under Title VII. In this case, though, Independent Life, the employer, has been properly named as a defendant. Accordingly, to proceed against Meeks in his official capacity would be redundant. Therefore, all Title VII claims against Meeks in his official capacity are due to be dismissed as well.

## V. AFTER–ACQUIRED EVIDENCE

The defendant Independent Life argues that plaintiff's recovery should be either limited or barred altogether based on the after-acquired evidence rule. According to the defendant, it learned during the course of preparing for this action that the plaintiff lied on his application for employment, and that it would not have hired Prescott had this information been known when he was hired. It also alleges that the plaintiff admitted to the use of illegal drugs while employed by it, and that had it discovered that fact, it would have immediately terminated his employment.

The Supreme Court of the United States recently addressed this issue in a case that came from the Sixth Circuit. *McKennon v. Nashville Banner Publishing Co.,* — U.S. ——, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). In *McKennon,* the Court ruled that an employer could not use after-acquired information as a total defense. *Id.* at ——, 115 S.Ct. at 885–86. The Court held, however, that such information may, on proper proof, bar reinstatement and recovery of front pay. According to the Court, "Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *Id.* This would apply equally to a situation such as the one before this court where an employer also contends that it would not

have hired the individual had it known of the wrongdoing. This ruling did not alter the state of the law in the Eleventh Circuit. *See Turnes v. AmSouth Bank,* 36 F.3d 1057, 1062 (11th Cir.1994) (information could be used "assuming that the after-acquired evidence *in and of itself* would have caused [defendant] to discharge [plaintiff]." (emphasis added)); *Wallace v. Dunn Const. Co., Inc.* 968 F.2d 1174 (11th Cir.1992), vacated and rehearing granted *en banc,* 32 F.3d 1489 (11th Cir.1994).

■ Therefore, if an employer can show the plaintiff would not have been hired, or would have been terminated, if the employer had possessed the after-acquired information at the time the decision was made, prospective relief such as reinstatement or front pay is inappropriate. However, this is a question of fact. If the employer would not have fired the plaintiff, or would still have hired him, even with the knowledge it later acquired, the defendant cannot use the information as a defense to prospective relief. The burden of proof is on the defendant. In this case, the defendant Independent Life has not shown without dispute that it would not have hired the plaintiff had it known the circumstances behind his having left his previous position.

## VI. STATE LAW CLAIM

### A. *Jurisdiction*

The only claim against Meeks surviving the dismissal of the Title VII claims against him is the state law claim for assault and battery. The Title VII claims having been dismissed against him, no federal claims remain against Meeks, and he contends that the court has no jurisdiction to hear the state law claim. The court, however, after considering whether it should exercise supplemental jurisdiction over the state law claim, holds that it should do so.

■ Under the terms of the Judicial Improvements Act of 1990, Pub.L. No. 101–650, 104 Stat. 5089, federal courts must employ supplemental jurisdiction unless there is a

specific exception. 28 U.S.C. § 1367(a).[10] *Wiggins v. Philip Morris, Inc.*, 853 F.Supp. 458, 469 (D.D.C.1994). Subdivision (c) of § 1367 gives the court discretion to decline to exercise the supplemental jurisdiction in various circumstances. 28 U.S.C. § 1367(c) (1993).

This court faced a similar issue in a case recently before it. *Yeager*, 865 F.Supp. 768. In *Yeager*, all Title VII claims had been dismissed against the individual defendant, but there remained Title VII claims against the employer based upon the acts of the individual. In that case, it was determined that "[n]one of the reasons which would authorize the court to decline to exercise supplemental jurisdiction exist in this case." *Yeager*, 865 F.Supp. at 772.

Likewise, in this case, the state law claim asserted by Prescott against Meeks is properly before the court. It does not raise any novel or complex issues of state law and it will not predominate over the Title VII claim against Independent Life. The court finds it clearly to be in the interest of judicial economy, and without substantial prejudice to either of the defendants, for the claims against Independent Life and Meeks to be tried at the same time, rather than in separate actions in different courts.

Although Meeks's alleged conduct did not give the plaintiff a federal claim against him individually, it is the activity that gave rise to a federal claim against his employer. The state law claim against Meeks is a part of the same case or controversy as the plaintiff's Title VII claim against Independent Life. The court will therefore exercise its discretion and will hear the claim.

### B. *Assault and Battery*

There also exists a substantial question of fact as to the claim for assault and battery. According to the Alabama Supreme Court, "In this state, an assault and battery is: Any touching by one person of the person of another in rudeness or anger." *Whitlow v. Bruno's, Inc.*, 567 So.2d 1235, 1239 (Ala.

1990) (citing *Seigel v. Long*, 169 Ala. 79, 53 So. 753, 754 (1910) and *Jacobi v. State*, 133 Ala. 1, 32 So. 158 (1902)) (internal citations and quotation marks omitted).

According to the plaintiff's affidavits, defendant Meeks repeatedly touched him in a manner that was offensive to him. Defendant Meeks argues that this did not happen. However, this is for the jury to determine, as is whether the actions, if proven, would be harmful or offensive to the reasonable person. Accordingly, Meeks's Motion for Summary Judgment as to plaintiff's claim for Assault and Battery is due to be denied.

### VII. CONCLUSION

For the reasons set forth above, the court finds that Defendant Independent Life's Motion for Summary Judgment is due to be and is hereby DENIED. Defendant Meeks' Motion for Summary Judgment as to the Title VII claims against him is due to be and is hereby GRANTED. Defendant Meeks' Motion for Summary Judgment as to the state law claims against him is due to be and is hereby DENIED.

DONE.

---

10. Section 1367(a) reads, "Except as provided in subsections (b) and (c) ... the District Courts shall have supplemental jurisdiction over all oth- er claims that are so related to the claims within such original jurisdiction that they form part of the same case or controversy...."