Jose G. TORRES, Plaintiff,

v.

NATIONAL PRECISION BLANKING, a DIVISION OF NATIONAL MATERIAL L.P., Defendant.

No. 96 C 776.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 7, 1996.

Howard Brian Prossnitz, Chicago, IL, for plaintiff.

William J. Raleigh, Margaret Mary Cahill, Maryl R. Rosen, Mullen, Raleigh & Cahill, Chicago, IL, for defendant.

### OPINION AND ORDER

NORGLE, District Judge:

Before the court is Defendant's Motion for Summary Judgment. Defendant asserts that same-gender sexual harassment claims cannot be brought pursuant to Title VII. The court agrees and, for the reasons set forth below, the motion is granted. Clearly, however, Plaintiff is not left without adequate state law remedies. Indeed, as to the individual actor, Plaintiff may pursue recourse under both civil and criminal laws.

## I. FACTS

Plaintiff Jose Torres ("Torres") worked for Defendant National Precision Blanking ("National"). Torres alleges that a co-worker, Larry Bond ("Bond"), engaged in "lewd and obscene homosexual acts," including "inserting his finger into [Torres'] rectum, bragging about how much of his finger he was able to insert into [Torres'] rectum, and walking around the plant floor holding his penis and asking male employees whether they wanted a piece of it." (Compl. at ¶ 6.) Torres "complained repeatedly" to his Plant Manager, but National management did nothing but "laugh about these incidents and treat them as a joke." (Compl. at ¶¶ 7–8.) Torres then filed a charge with the Equal Employment Opportunity Commission, and subsequently filed the instant lawsuit. Torres, who continues to work for National, alleges that Bond's conduct created a hostile work environment and, thus, gave rise to a claim under Title VII. National argues that a same-gender sexual harassment claim is not cognizable under Title VII. The court, for the same reasons discussed in *Schoiber v. Emro Mktg. Co.*, 941 F.Supp. 730 (N.D.Ill.1996), agrees with National.

## II. DISCUSSION

 Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *GCIU Employer Retirement Fund v. Chicago Tribune Co.*, 66 F.3d 862, 864 (7th Cir.1995). Where the facts as alleged and as proven do not lead to an avenue of recovery, ie. are not actionable, summary judgment should be entered in favor of the defendant. *Gavery v. Altheimer & Gray*, No. 95 C 2747, 1996 WL 521400, at *2 (N.D.Ill. Sept. 11, 1996); *Wagner v. Texas A & M Univ.*, 939 F.Supp. 1297, 1325–26 (S.D.Tex.1996).

### A. Same–Gender Sexual Harassment [1]

 The bulk of National's argument relates to the cognizability of a same-gender sexual harassment claim brought pursuant to Title VII of the Civil Rights Act. To say the

least, this argument takes the court into a "murky area of the law." *Vandeventer v. Wabash Nat'l Corp.*, 887 F.Supp. 1178, 1180 (N.D.Ind.1995). The United States Circuit Courts of Appeals are split on the issue, and the Seventh Circuit has yet to rule. The instant question is not a novel one; U.S. District Judges Milton Shadur and Ann Williams (both sitting in the Northern District of Illinois) addressed the issue fifteen and eight years ago, respectively. Yet, the decisions by the district judges (which were inimical) went unchecked and unreviewed. As a result, district courts located within the Seventh Judicial Circuit are left without guidance or direction from binding superior courts. The debate over "same-gender sexual harassment actionability" is escalating and ripe for circuit precedent. This court holds, for the following reasons, that Title VII does not allow plaintiffs to sue a member of the same gender for sexual harassment.

### 1. Brief History of Cases

The legal question of whether same-gender sexual harassment is actionable under Title VII first arose in this district. In *Wright v. Methodist Youth Servs., Inc.*, 511 F.Supp. 307 (N.D.Ill.1981) (Shadur, J.), the district court held that Title VII "should clearly encompass" a same-gender claim. In *Goluszek v. H.P. Smith*, 697 F.Supp. 1452 (N.D.Ill. 1988) (Williams, J.), another district court held that it should not.

The Fifth Circuit was the first federal appellate court to answer the question. In *Garcia v. Elf Atochem North Am.*, 28 F.3d 446 (5th Cir.1994), relying upon a previously-issued unpublished opinion, the unanimous Fifth Circuit panel held that "harassment by a male supervisor against a male subordinate does not state a claim under Title VII even though the harassment has sexual overtones." *Id.* at 451 (citing *Goluszek* as persuasive authority). Two years later, a divided Fourth Circuit panel affirmed a trial court's alternative ruling granting summary judgment in favor of defendants on evidentiary grounds, *Hopkins v. Baltimore Gas &*

---

**1.** The following discussion, with the exception of Subsection C and trivial changes and additions, is in the exact form as in the court's earlier-issued *Schoiber* order.

*Elec. Co.,* 77 F.3d 745 (4th Cir.1996), but left unreviewed the district court's primary finding that "Title VII does not provide a cause of action for an employee who claims to have been the victim of sexual harassment by a supervisor or co-worker of the same gender," *Hopkins v. Baltimore Gas & Elec. Co.,* 871 F.Supp. 822, 834 (D.Md.1994). Approximately two months ago, on July 29, 1996, a two-to-one Eighth Circuit panel held that, in some situations, a male could maintain a sexual harassment claim against another male co-worker. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1380 (8th Cir.1996).

### 2. Judicial and Congressional History of Title VII

Congress first enacted Title VII of the Civil Rights Act in 1964. The relevant portion of the statute enacted in 1964 remains intact and unamended: "It shall be an unlawful employment practice for an employer ... to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of such individual's* race, color, religion, *sex,* or national origin." 42 U.S.C. § 2000e–2(a)(1) (emphasis added). As noted in a plethora of federal judicial opinions, the word "sex" was added to the above sentence as a last-ditch effort by opponents of the statute to thwart the passage of the Act. *Ulane v. Eastern Airlines, Inc.,* 742 F.2d 1081, 1084 (7th Cir.1984). "Sex as a basis of discrimination was added as a floor amendment one day before the House approved Title VII, without prior hearing or debate." *Holloway v. Arthur Andersen & Co.,* 566 F.2d 659, 662 (9th Cir.1977). The effort faltered, "the bill quickly passed as amended, and we are left with little legislative history to guide us in interpreting the Act's prohibition against discrimination based on sex." *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986).

The Congressional Record is silent as to whether Title VII was to be "all-encompass-

ing." *Ulane,* 742 F.2d at 1085. Indeed, on numerous occasions, Congressional members attempted to amend Title VII to include "affectation or sexual orientation" as illegal bases for workplace discrimination. *Romer v. Evans,* —— U.S. ——, ——, 116 S.Ct. 1620, 1637, 134 L.Ed.2d 855 (1996) (Scalia, J., dissenting) (acknowledging the "plebeian attitudes that apparently still prevail in the United States Congress, which has been unresponsive to repeated attempts to extend to homosexuals the protection of federal civil rights laws"); *Ulane,* 742 F.2d at 1085; Employment Non–Discrimination Act of 1994, S. 2238, 103d Cong., 2d Sess. (1994); Civil Rights Amendments of 1975, H.R. 5452, 94th Cong., 1st Sess. (1975). All of these efforts failed. *Id.*

Like sexual orientation harassment, Congress did not specifically include sexual harassment as a cognizable Title VII claim. In 1986, the United States Supreme Court held that a claim of "hostile environment" sexual harassment was a form of sex discrimination actionable under Title VII. *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 73, 106 S.Ct. 2399, 2408–09, 91 L.Ed.2d 49 (1986).[2] However, Title VII does not make unlawful all constructs of harassment; the harassment must be "because of ... sex" and the conduct of the harassing co-worker or supervisor must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 67, 106 S.Ct. at 2405. Moreover, in *Franklin v. Gwinnett County Pub. Schs.,* 503 U.S. 60, 75, 112 S.Ct. 1028, 1037–38, 117 L.Ed.2d 208 (1992), the Supreme Court confirmed that, "[w]ithout question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor discriminate[s] on the basis of sex." *Id.*

We know from Supreme and Circuit Court decisions that the term "sex," at least as used in Title VII, connotes "gender,"[3] *not* sexu-

---

**2.** The Court reaffirmed its *Meritor* decision through its opinion in *Harris v. Forklift Sys.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

**3.** As Chief Judge Posner points out in his book *Sex and Reason,* the term "gender" ("the division

of humankind into two sexes") is one "borrowed from grammar to designate the sexes viewed as social rather than biological classes." Richard A. Posner, *Sex and Reason,* pp. 24–25 (1992). The court is aware of what some term a third, hybrid version of gender, hermaphrodites. *Id.* at

<br>

al preference, identity or orientation. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 239–41, 109 S.Ct. 1775, 1784–86, 104 L.Ed.2d 268 (1989) (referring to "gender" and "sex" interchangeably); *Harris*, at ——, 114 S.Ct. at 371 (Title VII is violated only when "discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their ... *gender*") (emphasis added); *Hopkins*, 77 F.3d at 749 n. 1; *Ulane v. Eastern Airlines, Inc.*, 742 F.2d 1081, 1084 (7th Cir.1984).[4] We also know from case law and the Congressional Record that the principal purpose of including the term "sex" in the Act was to "do some good for the minority sex," 110 Cong. Rec. 2577 (1964), i.e. to promote equal employment opportunity for women in the workplace. *Meritor*, 477 U.S. at 67, 106 S.Ct. at 2405–06 ("Sexual harassment which creates a hostile or offensive environment for members of one sex is every bit the arbitrary barrier to *sexual equality* at the workplace that racial harassment is to racial equality"); *Connecticut v. Teal*, 457 U.S. 440, 448, 102 S.Ct. 2525, 2531, 73 L.Ed.2d 130 (1982); *McDonnell v. Cisneros*, 84 F.3d 256, 260 (7th Cir.1996) ("Sexual harassment was brought under the aegis of Title VII's sex discrimination clause because it makes the workplace difficult for women on account of their sex").

But we on the Northern District bench do not know much more; may Title VII be invoked when the harasser and victim are of

the same gender? The answer to that question directs the outcome of the instant motion, and thus the court's primary inquiry focuses on the cognizability of a same-gender claim. And so the court begins that discussion.

### 3. The Split of Persuasive Authority

■ The EEOC, Eighth Circuit, and a variety of district courts[5] have held that same-gender actions are cognizable under Title VII. The EEOC Compliance Manual states as follows:

> The victim does not have to be of the opposite sex from the harasser. Since sexual harassment is a form of sex discrimination, the crucial inquiry is whether the harasser treats a member or members of one sex differently from members of the other sex. The victim and the harasser may be of the same sex where, for instance, the sexual harassment is based on the victim's sex (*not* on the victim's sexual preference) and the harasser does not treat the employees of the opposite sex the same way.

EEOC Compliance Manual, § 615.2(b)(3). While the court is aware "that the EEOC is charged by Congress with interpreting, administering, and enforcing Title VII," it is not bound by the EEOC's stance on the issue.[6] *Waag v. Thomas Pontiac, Buick,*

---

26. Yet, the court will not address it since it is yet to be recognized as a gender by federal courts.

**4.** Some may argue that our current societal definition of "sex" encompasses more than mere gender distinction. The court agrees with the premise of such an argument, for "[a] word is not a crystal, transparent and unchanged; it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." *Towne v. Eisner*, 245 U.S. 418, 38 S.Ct. 158, 62 L.Ed. 372 (1918) (Holmes, J.). However, no matter how meritorious the premise, the argument itself is of no significance; as noted by case law cited *infra*, the term "sex" at the time of the passage of Title VII meant "gender."

**5.** *Peric v. Board of Trustees of the Univ. of Ill.*, No. 96 C 2354, 1996 WL 515175 (N.D.Ill. Sept. 6, 1996); *Ton v. Information Resources, Inc.*, No. 95 C 3565, 1996 WL 5322 (N.D.Ill. Jan. 3, 1996);

*King v. M.R. Brown, Inc.*, 911 F.Supp. 161 (E.D.Penn.1995); *Raney v. District of Columbia*, 892 F.Supp. 283 (D.D.C.1995); *EEOC v. Walden Book Co., Inc.*, 885 F.Supp. 1100 (M.D.Tenn. 1995); *Pritchett v. Sizeler*, Civ. A. No. 93–2351, 1995 WL 241855 (E.D.La.1995); *Griffith v. Keystone Steel & Wire*, 887 F.Supp. 1133 (C.D.Ill. 1995); *McCoy v. Johnson Controls World Servs., Inc.*, 878 F.Supp. 229 (S.D.Ga.1995); *Roe v. K–Mart Corp.*, No. Civ. A. 2:93–2372–18AJ, 1995 WL 316783 (D.S.C.1995); *Prescott v. Indep. Life & Accident Ins. Co.*, 878 F.Supp. 1545 (M.D.Ala. 1995); *Joyner v. AAA Cooper Transport.*, 597 F.Supp. 537 (M.D.Ala.1983); *Wright v. Methodist Youth Servs., Inc.*, 511 F.Supp. 307 (N.D.Ill. 1981).

**6.** While EEOC guidelines "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance," they are not "controlling upon the courts by reason of their authority." *Meritor*, 477 U.S. at 65, 106 S.Ct. at 2404.

*GMC, Inc.*, 930 F.Supp. 393, 396 (D.Minn. 1996).[7]

In deciding whether same-gender sexual harassment is actionable, the Eighth Circuit focused on the five-element sexual harassment test established through a series of circuit court opinions. *Quick v. Donaldson Co.*, 90 F.3d 1372 (8th Cir.1996). According to the *Quick* court, plaintiffs must establish five requirements: that "(1) he belongs to a protected group;[8] (2) he was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action." *Id.* at 1377. The *Quick* district court found that harassment by a person of the same gender as the victim was not, as a matter of law, "based on sex." The circuit court reversed; "[t]he proper inquiry for determining whether discrimination was based on sex is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* at 1379. According to the Eighth Circuit, facts can exist to warrant a same-gender sexual harassment claim. *Id.*[9]

Judge Harry D. Leinenweber of this district similarly found that same gender claims are actionable under Title VII. In *Ton v. Information Resources, Inc.*, No. 95 C 3565, 1996 WL 5322 (N.D.Ill. Jan. 3, 1996) (Leinenweber, J.), the district court implicitly adopted the EEOC's stance on the issue and took its turn poking holes in the *Goluszek* decision. More specifically, the *Ton* court noted that "nothing in the language or legislative history of Title VII indicates that same-sex harassment is not prohibited," [10] and pointed out the alleged "asymmetry" of allowing reverse race-discrimination claims but not same gender sexual harassment claims.[11] *Id.* at *7. On September 6, 1996, U.S. District Judge Suzanne Conlon concurred with Judge Leinenweber, and found same-gender sexual harassment to be actionable. *Peric v. Board of Trustees of the Univ. of Ill.*, No. 96 C 2354, 1996 WL 515175 (N.D.Ill. Sept. 6, 1996).

The Fourth Circuit had the opportunity to speak twice on the issue, but declined to hold that all same-gender sexual harassment claims are not actionable. First, in *McWilliams v. Fairfax Co. Bd. of Supervisors*, 72 F.3d 1191 (4th Cir.1996), the Fourth Circuit held that heterosexual-male-on-heterosexual-male sexual harassment claims do *not* fall within Title VII proscriptions since the harassment was not "because of" the target/victim's sex. *Id.* at 1196. In support of the holding, the author penned:

> The difficulty of construing this causation language to reach such same-sex claims

---

7. The court is mindful that the EEOC is a frequent litigator in federal courts, and acknowledges that its view that same-gender sexual harassment violates Title VII, the very law under which it initiates and litigates lawsuits, is self-serving. Moreover, the court notes that the EEOC is also a frequent loser in litigation; not all of its arguments prevail. *EEOC v. CNA Ins. Cos.*, No. 96–1304, 1996 WL 549504 (7th Cir. Sept. 27, 1996) (affirming the district court's refusal to enjoin defendants from allegedly illegal practices); *EEOC v. Harvey L. Walner & Assoc.*, 91 F.3d 963 (7th Cir.1996) (holding that the EEOC lacked standing to bring the action against the employer); *EEOC v. Our Lady of the Resurrection Med. Ctr.*, 77 F.3d 145 (7th Cir.1996) (holding that EEOC failed to demonstrate that employer's legitimate, nondiscriminatory reason for terminating employee was pretext for race discrimination); *EEOC v. Francis W. Parker Schl.*, 41 F.3d 1073 (7th Cir.1994) (cert. denied) (affirming summary judgment in favor of defendant); *EEOC v. Chicago Miniature Lamp Works*, 947 F.2d 292 (7th Cir.1991) (en banc) (holding that district court erred in relying on EEOC's statistical evidence in finding disparate treatment and disparate impact).

8. The Supreme Court held (without delving into the turbid area of transsexualism and hermaphrodites) that the protected class under the "sex" part of Title VII includes both men and women. *Harris*, at ——, 114 S.Ct. at 370.

9. The *Quick* case was recently reaffirmed by the Eighth Circuit in *Kinman v. Omaha Pub. Sch. Dist.*, 94 F.3d 463 (8th Cir.1996).

10. The court notes that, conversely, nothing in the language of Title VII indicates that sexual harassment is *actionable*.

11. The court understands the argument. Respectfully, the court notes that the corollary of reverse-race discrimination would be reverse-sexual harassment discrimination, i.e. a woman sexually harassing a man.

and the commonsense of not doing so are emphasized when the practical implications are considered. That this sort of conduct is utterly despicable by whomever experienced; that it may well rise to levels that adversely affect the victim's work performance; and that no employer knowingly should tolerate it are all undeniable propositions. But to interpret Title VII to reach that conduct when only heterosexual males are involved as harasser and victim would be to extend this vital statute's protections beyond intentional discrimination "because of" the offended worker's "sex" to unmanageable broad protection of the sensibilities of workers simply "in matters of sex." We cannot believe that Congress in adopting this critical causation language and the Supreme Court in interpreting it to reach discrimination by the creation of hostile workplace environments could have intended to reach such situations. There perhaps "ought to be a law against" such puerile and repulsive workplace behavior even when it involves only heterosexual workers of the same sex, in order to protect the victims against its indignities and debilitations, but we conclude that Title VII is not that law.

*Id.* Yet, the *McWilliams* court "specifically reserve[d] decision on the question whether, when all the actors involved in a Title VII claim of sex-discrimination (in any of its forms) are of the same sex, the homosexuality of any may make the claim nevertheless cognizable as one of 'discrimination because of the victim's sex.'" *Id.* at 1195.

Two months after the *McWilliams* decision, the Fourth Circuit again returned to the issue of same-gender sexual harassment, and for the second time refused to directly address whether same-gender sexual harassment forms a cognizable Title VII claim. The divided panel held, "Regardless of whether ... same-gender sexual harassment

is actionable under Title VII, [the plaintiff] still bears the burden of demonstrating ... that ... [the] alleged harassment was sufficiently severe or pervasive to create an objectively hostile or abusive work environment and the harassment was directed at him because of his sex." *Hopkins v. Baltimore Gas & Elec. Co.,* 77 F.3d 745, 753 (4th Cir.1996). Yet, Judge Niemeyer, who wrote for the panel but also wrote separately, went much further in his detached portion of the opinion,

> In the context of Title VII's legislative history, ... it is apparent that Congress did not intend such sweeping regulation [to allow same-sex claims]. The suggestion that Title VII was intended to regulate everything sexual in the workplace would undoubtedly have shocked every member of the 88th Congress, even those most vigorously supporting passage of the Act. Detached from their historical setting, the terms of Title VII's prohibition or discrimination, "because of" an individual's "sex," stand only as "inert language, lifeless words," and, perhaps, even "playthings with which to reconstruct the Act."

*Id.* at 751. Judge Niemeyer wrote more, "I reject the notion that when a man, for example, uses sexually oriented gestures and language, or engages in sexually perverse activity to harass another man, Title VII *automatically* imposes liability. Such conduct may constitute a common law tort, but, without more, it does not amount to discrimination against the employee because he is a man." *Id.* at 752. Yet, Judge Niemeyer did "conclude that sexual harassment of a male employee, whether by another male or by a female, may be actionable under Title VII if the basis for the harassment is because the employee is a man." *Id.*

The Fifth Circuit, as well as an assortment of district courts,[12] held that Title VII does not proscribe same-gender sexual harassment.[13] The Fifth Circuit's stance on the

---

12. *Garcia v. Elf Atochem North Am.,* 28 F.3d 446 (5th Cir.1994); *Quick v. Donaldson Co., Inc.,* 895 F.Supp. 1288 (S.D.Iowa 1995) (rev'd); *Ashworth v. Roundup Co.,* 897 F.Supp. 489 (W.D.Wash. 1995); *Oncale v. Sundowner Offshore Servs.,* Civ. A. No. 94–1483, 1995 WL 133349 (E.D.La.1995); *Benekritis v. Johnson,* 882 F.Supp. 521 (D.S.C. 1995); *Myers v. City of El Paso,* 874 F.Supp. 1546 (W.D.Tex.1995); *Fleenor v. Hewitt Soap*

Co., No. C–3–94–182, 1995 WL 386793 (S.D.Ohio 1994); *Hopkins v. Baltimore Gas & Elec. Co.,* 871 F.Supp. 822 (D.Md.1994).

13. The Sixth Circuit has declined to address the instant issue. *Fleenor v. Hewitt Soap Co.,* 81 F.3d 48 (6th Cir.1996).

issue is well-recorded, but minimally supported. In *Garcia v. Elf Atochem North Am.*, 28 F.3d 446 (5th Cir.1994), the circuit panel referred to its unpublished order in *Giddens v. Shell Oil Co.*, 12 F.3d 208 (5th Cir.1993), in which the court held that "harassment by a male supervisor against a male subordinate does not state a claim under Title VII even though the harassment has sexual overtones. Title VII addresses gender discrimination." *Id.* at 451–52. That was it; no analysis, and no further discussion. However, a later opinion noted the precedential effect of the *Garcia* holding. *Oncale v. Sundowner Offshore Servs., Inc.*, 83 F.3d 118, 120 (5th Cir.1996).

### 4. Cognizability of a Same–Gender Claim

The court finds that the nationwide progeny of *Garcia*, which contain much more analysis and reasoning than *Garcia* alone, comprise the enlightened interpretation of Title VII. Other courts disagree. When determining whether plaintiffs state a claim for relief, courts allowing same-gender sexual harassment actions jump directly into analyzing whether those plaintiffs have pleaded the necessary elements of the traditional hostile work environment sexual harassment test, usually leaving the ultimate resolution to the jury. They do not first consider the threshold inquiry of whether Congress intended same-gender sexual harassment to be actionable under Title VII. The approach used by these courts is erroneous in that it ignores the forest for the trees. Regardless of whether the elements are successfully pleaded, or successfully proven, there can be no federal claim for relief absent legislative direction.

Therefore, the instant inquiry should not be one of "satisfying the elements," but instead one of statutory interpretation, and "the task of statutory interpretation is one best placed in the hands of the trial judge." *United States v. Moore*, 38 F.3d 977, 979 (8th Cir.1994). Circuit and District courts alike are frequently called upon to determine whether Congress intended to protect all individuals in the workplace from all co-workers, not just women from men and men from women. This court finds that it did not.

Because it is well-settled that Title VII protects only against "gender discrimination" as defined by Congress, and not discrimination of sexual affectation, preference, or orientation, the court holds that a male cannot, as a matter of law, sue for sexual harassment by a fellow male under Title VII, no matter the sexual orientations of the two.

In so holding, the court agrees with several statements made by Judge Niemeyer of the Fourth Circuit. There can be little doubt that, in 1964, Congress did not seek to protect men from other sexually-harassing men in the workplace, let alone did it articulate the need for such protection. Title VII was passed to protect women against the "Old Boys Club," the dominant male gender in 1964. It took nineteen years after passage of Title VII for the Supreme Court to extend Title VII to protect both men and women. *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 676, 103 S.Ct. 2622, 2627, 77 L.Ed.2d 89 (1983). But that is as far as the Supreme Court went; it allowed Title VII protection for "both men and women against workplace sexual harassment by the opposite sex, it has not specifically addressed whether the Act's prohibitions apply when the harasser and the victim are the same sex." *Hopkins*, 77 F.3d at 750.

Because federal courts must accept Title VII in the same version as passed, no matter how grudging the acceptance, and are required to adopt the legislative history as if it were our own, the court is compelled to find, as did the Fifth Circuit and Senior District Judge Harvey, see *infra*, that same-gender sexual harassment is not actionable under Title VII. Judge Harvey authored the opinion in *Hopkins v. Baltimore Gas & Elec. Co.*, 871 F.Supp. 822 (D.Md.1994), in which he stated,

> Title VII prohibits discriminatory conduct on the basis of gender and evinces a congressional intent to "strike at the entire spectrum of disparate treatment of men and women." Where, as here, the alleged harasser and the alleged victim are both of the same gender, the language of the statute would be strained beyond its manifest intent were the court to hold that under

these facts there has been discrimination "because of ... sex."

*Hopkins,* 871 F.Supp. at 834. It is the court's "responsibility ... to interpret ... congressional legislation and determine what Congress intended when it decided to outlaw discrimination based on sex." *Ulane,* 742 F.2d at at 1084. In interpreting Title VII, and giving the phrase "because of sex" a narrow and conventional reading, as required by the Seventh Circuit, *id.* at 1085, the court adopts the above reasoning of Judge Harvey in finding that Title VII does not proscribe same-gender sexual harassment. "In the ordinary case, absent any 'indication that doing so would frustrate Congress's clear intention or yield patent absurdity, our obligation is to apply the statute as Congress wrote it.'" *United States v. Ranum,* 96 F.3d 1020, 1029 (7th Cir.1996) (quoting *Hubbard v. United States,* —— U.S. ——, ——, 115 S.Ct. 1754, 1759, 131 L.Ed.2d 779 (1995)). Nothing in Title VII directs the court to allow same-gender sexual harassment claims, and to do so would be to move away from Congressional intent. Simply put, same-gender sexual harassment does not and cannot occur, as a matter of law, "because of" the victim's "sex."

The court is mindful that the Seventh Circuit, in *dicta,* hinted that it may recognize such same gender claims. In the oft-cited *Baskerville* case, specifically *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428 (7th Cir.1995), Chief Judge Posner included the following parenthetical remark: "Sexual harassment of women by men is the most common kind, but we do not mean to exclude the possibility that sexual harassment of men by women, or men by other men, or women by other women would not also be actionable in appropriate cases." *Id.* at 430. (The issue raised, but not decided, by Judge Posner in the insightful parenthetical found within *Baskerville* is resolved by this Opinion and Order. This court, as it did in *Schoiber, does* mean to exclude the possibility that sexual harassment of men by other men, or women by other women, would be actionable under Title VII.) Subsequent to the issuance of the *Baskerville* opinion, Chief Judge Posner wrote:

Analysis is complicated by the fact that a difference in sex is not a necessary condition of sexual activity and hence (most courts think) of sexual harassment. There is plenty of homosexual activity these days (perhaps all days); some of it occurs in the workplace; and some involves the extorting of sexual favors by superiors, or other behaviors that when heterosexual expose employers to liability for sexual harassment in violation of Title VII's prohibition of sex discrimination.

*McDonnell v. Cisneros,* 84 F.3d 256, 260 (7th Cir.1996).

However, *Ulane* directs the court to hold differently, and the court may not forecast a superior court's holding prior to its issuance. *Khan v. State Oil Co.,* 93 F.3d 1358, 1363 (7th Cir.1996). The court finds that the Seventh Circuit has created binding authority, through the issuance of the *Ulane* opinion, to which this court is required to adhere. Disregarding *dicta* having no bearing on the cases in which it was found, as this court must, *Wittmer v. Peters,* 87 F.3d 916, 919 (7th Cir.1996) ("But ... dicta are dicta and not holdings, that is, are not authoritative"), the court finds that the instant outcome is consistent with the teachings in *Ulane,* one of the very few cases involving a non-traditional sexual harassment fact pattern.

The *Ulane* case involved a plaintiff who was born a male, but underwent "sex reassignment surgery" to become a female. Illinois issued the plaintiff a revised birth certificate indicating that the plaintiff was a female, and the FAA certified the plaintiff for "flight status" as a female. The district court found that the defendant discharged the newly-gendered female because of the plaintiff's transsexualism, and further found that Title VII made such a discharge unlawful. The Seventh Circuit reversed the district court and applied a "narrow, traditional interpretation" of the phrase "because of sex." The court stated,

Although the maxim that remedial statutes should be liberally construed is well recognized, that concept has reasonable bounds beyond which a court cannot go without transgressing the prerogatives of Congress. In our view, to include transsexuals

within the reach of Title VII far exceeds mere statutory interpretation. Congress had a narrow view of sex in mind when it passed the Civil Rights Act, and it has rejected subsequent attempts to broaden the scope of its original interpretation. For us to now hold that Title VII protects transsexuals would take us out of the realm of interpreting and reviewing and into the realm of legislating. *See Gunnison v. Commissioner*, 461 F.2d 496, 499 (7th Cir.1972) (it is for the legislature, not the courts, to expand the class of people protected by the statute). This we must not and will not do. Congress has a right to deliberate on whether it wants such a broad sweeping of the untraditional and unusual within the term "sex" as used in Title VII.

*Ulane*, 742 F.2d at 1086. "While we do not condone discrimination in any form," the Seventh Circuit stated, "we are constrained to hold that Title VII does not protect transsexuals," as well as homosexuals and transvestites. *Id.* at 1084.

This court's finding (that the phrase "because of sex," construed narrowly, does not include same-gender actions) is consistent with *Ulane*. Much like the circuit court in *Ulane*, this court is compelled to find that, while not condoning the alleged actions taken by Defendants, the allegations in the Complaint do not form a basis for a Title VII claim. Congress, not a federal court, must make such a determination.

Further, the court agrees with Chief Judge Posner that sexual harassment occurs in male-on-male and female-on-female formats, though less frequently than in the prevalent male-on-female harassment cases. Yet, Title VII's drafters did not intend to protect one gender from the sexual conduct of those of the same gender, and therefore, Title VII cannot be a vehicle for sexual harassment litigation between individuals of the identical gender. No matter whether the predator is a homosexual or heterosexual, and no matter whether the prey is sexually attracted to men or women, Title VII does not allow for claims alleging same-gender sexual harassment.

### 5. Same–Gender Sexual Harassment Versus Common Gender Discrimination

This is not to say that traditional sex/gender discrimination cannot occur between members of the same gender. Nor does the court mean to say that such conventional gender discrimination claims cannot be brought under Title VII. The court can postulate a set of facts suggesting that a member of one gender discriminated against another of the same gender "because of sex." Indeed, a woman who hires only men and refuses to hire other women discriminates "because of" gender. However, sexual harassment (the judicially-created sub-part of sex discrimination under Title VII) is different from typical sex/gender discrimination: each involves a different legal test and distinct legal inferences.[14]

Moreover, same-gender sexual harassment, as opposed to typical gender discrimination, cannot be wholly separated from sexual orientation, preference, identification, and affectation. In order to allow same-gender sexual harassment actionability, federal courts would be required to delve into the gyttja of subjective psychological analysis in litigation. This would include actions by bisexuals, "a number 3 on the Kinsey Scale of sexual preference[,] who by definition [are] indifferent to the sex of [their] victims and so engage in sexual harassment without discriminating on the basis of sex." *McDonnell v. Cisneros*, 84 F.3d 256, 260 (7th Cir.1996). *See Chiapuzio v. BLT Operating Corp.*, 826

---

14. Even within sexual harassment cases, same-gender and different-gender cases (involving the conventional fact pattern of a male supervisor or co-worker harassing a female employee) involve different inferences. Different-gender harassment cases present a recognized inference that "sexual behavior directed at a woman by a man" occurs "because of" the woman's "sex." *Burns v. McGregor Elec. Inds., Inc.*, 955 F.2d 559, 564

(8th Cir.1992). However, such an inference cannot be created by harassment between members of a single gender. "When the alleged offender and the alleged victim share the same gender, similar sexually suggestive words and acts can take on a whole other meaning." *Easton v. Crossland Mtg. Corp.*, 905 F.Supp. 1368, 1383 (C.D.Cal.1995).

F.Supp. 1334, 1337 (D.Wyo.1993).[15] In an effort to sort sexual from platonic harassment, courts would be forced to distinguish between locker room antics and sexual foreplay, an often highly subjective inquiry. Thankfully, we need not make such distinctions because Title VII protects members of both genders from sexual harassment by their opposite gender; according to the drafter's version of Title VII, it is impossible for a male to illegally harass a male—even if the harassment has carnal, salacious, or prurient overtones—"because of" the victim's gender, as a matter of law.

Congress may enact a law to protect males against sexual harassment by other males. Congress may enact a law to protect females from harassment by other females. Further, Congress may enact laws protecting all individuals, including transsexuals, transvestites, and bisexuals, against any and all workplace harassment. But Title VII is not that law and cannot be amended by federal courts to become that law. Simply put, Torres' allegations here have yet to be recognized by the United States Congress, and thus are not cognizable claims under Title VII. Thus, this court is without jurisdiction to entertain Count I of the Complaint.[16]

## C. Comment [17]

The court is well aware of the unfortunate fact that the despicable conduct alleged, and proven, in this case occurs in the world of employment. The frequency of such behavior may be disturbing and socially unacceptable. For a variety of legal and non-legal reasons, such conduct should not be tolerated in the workplace, and such acts may well constitute legitimate, non-discriminatory reasons for discharging employee perpetrators. The court emphasizes that Torres may have another remedy for his injuries under a different law, such as the Illinois Human Rights Act, Illinois tort law, or even statutory criminal law. But, however deplorable same-gender sexual harassment may be, Title VII does not provide a "law against it."

Employers are entitled to Congressional notice of where liability may potentially arise under Title VII. Congress was silent on the instant issue in 1964. It was again silent in 1991; the same-gender sexual harassment issue was not novel in 1991, but Congress declined to specifically amend Title VII to allow for such claims. *Luddington v. Indiana Bell Tel. Co.*, 966 F.2d 225, 229 (7th Cir.1992) ("True, [the Civil Rights Act of 1991] does not prohibit any conduct not already prohibited by Title VII, except the practice of 'race norming' (raising mean test scores of minority applicants to the mean of the majority)"). Perchance, orders such as this one will bring the instant issue to the public's attention. In due course, there may be legislative reaction to cases similar to this one. The legislature may extend Title VII, or pass a separate statute, to chastise employers allowing same-gender sexual harassment.

However, the court must interpret Title VII as it now exists, and cannot extend it to make it more symmetrical or logical, for that is not the court's function. "If making statutes logical or symmetrical was the judicial task, we would be a law revision commission, not a court." *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1317–18 (7th Cir.1989) (Ripple, J., concurring).[18] While there can be no doubt that Bond's acts are blatant "sexual harass-

---

**15.** The district court in *Chiapuzio* noted, in part,

[I]t also seems peculiar to call sexual harassment of a male by a male, or of a female by a female, sex discrimination ... What the harasser is really doing is preferring or selecting some one member of his own gender for sexual attention, however unwelcome that attention may be to its object. He certainly does not *despise the entire group, nor does he wish to* harm its members, since he is a member himself.

*Chiapuzio*, 826 F.Supp. at 1337.

**16.** State legislatures, on the other hand, have provided vast remedies for parties aggrieved by

unwelcomed sexual behavior, and indeed have legislated even in the area of consensual conduct between adults. *Bowers v. Hardwick*, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986).

**17.** As eluded to *supra*, the foregoing discussion was taken directly from an earlier order issued by the court in *Schoiber*—save the following discussion.

**18.** "Tyger, Tyger, burning bright, / In the forests of the night; / What immortal hand or eye, / Could frame thy fearful symmetry?" Excerpt from William Blake's "The Tiger", *Songs of Experience* (1794).

ment" under the public's general definition, they do not constitute sexual harassment under Title VII.

### D. *Supplemental State Claims*

Without a jurisdiction-invoking claim for relief, the Seventh Circuit has directed district courts to relinquish jurisdiction over supplemental state claims "when all federal claims fall out before trial" and when there is no other justification to retain jurisdiction. *Khan v. State Oil Co.*, 93 F.3d 1358, 1365 (7th Cir.1996) (citing *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir.1993)). The presumption against retaining jurisdiction of supplemental state-law claims when the federal claims are dismissed before trial "is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *Id.* The parties have not provided, and the court is unaware, of any reasons which warrant the court's retention of jurisdiction. Accordingly, the court relinquishes jurisdiction over the remaining state law supplemental count. As such, the court need not make any inquiries relating to preemption by the state human rights act and the applicable workers' compensation law. Again, the court notes that such laws may well provide Torres with a remedy for his suffering.

### IV. CONCLUSION

As stated in the *Schoiber* Order, the court finds that Torres cannot, as a matter of law, plead a same-gender sexual harassment claim under Title VII. The federal judiciary cannot amend Title VII so that it may apply to claims not intended by Congress. This would be unconstitutional; it would infringe upon the powers of the legislative branch.

Ever mindful of Title VII's broad purpose of removing barriers to sexual equality in the workplace, the court nevertheless declines the invitation to act here as an interstitial legislator—shoving here, tugging there—to bridge the perceived gaps in the law on this issue of the cognizability of claims under Title VII regarding sexual harassment between members of the same gender. This narrow issue lends itself to the legislative process rather than a judge's creative view of what this law ought to encompass or what public policy demands.

In sum, the court is without jurisdiction to entertain the count brought purportedly pursuant to Title VII and, accordingly, dismisses Count I. The court declines to exercise jurisdiction over the remaining counts.

IT IS SO ORDERED.